**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 16-1932**

_____

ROBERT E. LEE SUPINGER, JR.,

       Plaintiff - Appellee,

  v.

RICHARD D. HOLCOMB, Commissioner of the Department of Motor Vehicles of the Commonwealth of Virginia; JOSEPH HILL, Assistant Commissioner of the Department of Motor Vehicles of the Commonwealth of Virginia; JEANNIE THORPE, Human Resources Director for the Department of Motor Vehicles of the Commonwealth of Virginia,

       Defendants - Appellants,

  and

COMMONWEALTH OF VIRGINIA; COMMONWEALTH OF VIRGINIA DEPARTMENT OF MOTOR VEHICLES; DONALD BOSWELL, (former) Law Enforcement Director for the Department of Motor Vehicles of the Commonwealth of Virginia; TOM PENNY, Director of Fuels Tax for the Department of Motor Vehicles of the Commonwealth of Virginia,

       Defendants.

_____

**No. 16-1984**

_____

DAVID L. STULTZ,

       Plaintiff - Appellee,

  v.

RICHARD D. HOLCOMB, Individually and in his official capacity as Commissioner of the Department of Motor Vehicles for the Commonwealth of Virginia; JOSEPH HILL, individually and in his official capacity as Assistant Commissioner of the Department of Motor Vehicles for the Commonwealth of Virginia; JEANNIE THORPE, individually and in her official capacity as Human Resources Director for the Department of Motor, Vehicles for the Commonwealth of Virginia; WILLIAM ANDERSON, individually and in his official capacity as Employee Relations Manager for the Department of Motor Vehicles for the Commonwealth of Virginia; THOMAS PENNY, individually and in his official capacity as Director of Field Operations for the Department of Motor Vehicles for the Commonwealth of Virginia; RONNA HOWARD, Individually, and in her official capacity as Legal Analyst for the Department of Motor Vehicles for the Commonwealth of Virginia,

        Defendants - Appellants,

  and

COMMONWEALTH OF VIRGINIA DEPARTMENT OF MOTOR VEHICLES; COMMONWEALTH OF VIRGINIA; SEAN CONNAUGHTON, Individually and in his official capacity as Secretary of Transportation for the Commonwealth of Virginia; GEORGIA ESPOSITO, Individually and in her official capacity as the Executive Assistant to the Secretary of Transportation for the Commonwealth of Virginia; DONALD BOSWELL, Individually, and in his former capacity as Director of Law Enforcement for the Department of Motor Vehicles for the Commonwealth of Virginia; AUBREY LANE, in his official capacity only as the Secretary of Transportation for the Commonwealth of Virginia,

        Defendants.

---

Appeals from the United States District Court for the Western District of Virginia, at Lynchburg and Roanoke.  Norman K. Moon, Senior District Judge; Glen E Conrad, District Judge.  (6:15-cv-00017-NKM-RSB; 7:13-cv-00589-GEC)

---

Argued:  October 25, 2017                  Decided:  December 4, 2017

---

Before WILKINSON, KEENAN, and FLOYD, Circuit Judges.

---

Affirmed in part and vacated and remanded in part by unpublished per curiam opinion.

---

**ARGUED:** Ryan Spreague Hardy, Sydney Edmund Rab, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellants. Terry Neill Grimes, TERRY N. GRIMES, ESQ., PC, Roanoke, Virginia, for Appellee Robert E. Lee Supinger, Jr. Dale Wade Webb, FRANKL MILLER WEBB & MOYERS LLP, Roanoke, Virginia, for Appellee David L. Stultz. **ON BRIEF:** Brittany M. Haddox, TERRY N. GRIMES, ESQ., PC, Roanoke, Virginia, for Appellee Robert E. Lee Supinger, Jr. Audra M. Dickens, FRANKL MILLER WEBB & MOYERS LLP, Roanoke, Virginia, for Appellee David L. Stultz.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Supinger and David Stultz, former employees of the Virginia Department of Motor Vehicles, claim that their statutory and constitutional rights were violated when they were terminated. Relevant to this interlocutory appeal, both Supinger and Stultz claim due process violations based on the denial of post-termination hearings, and Stultz claims that he was fired in retaliation for exercising his First Amendment rights. The state officials who are defendants have asserted that they are entitled to qualified immunity, but the district court rejected this defense. On this consolidated interlocutory appeal, we affirm the district court's denial of qualified immunity as to the due process claims, and remand with instructions to hold the First Amendment claims in abeyance pending further proceedings.

I.

The plaintiffs in these cases, Robert E. Lee Supinger Jr. and David L. Stultz, are a former Assistant Special Agent in Charge and a former Special Agent in Charge, respectively, at the Virginia Department of Motor Vehicles (DMV). Both were primarily based at the Lynchburg Law Enforcement Services office.

The defendant-appellants in these cases are all government officials at the DMV. Richard Holcomb was the Commissioner of the DMV, Joseph Hill was the Assistant Commissioner of the DMV, Jeannie Thorpe was the Human Resources Director of the DMV, William Anderson was the Employee Relations Manager for the DMV, Thomas Penny was the Director of Field Operations for the DMV, and Ronna Howard was a

4

Legal Analyst for the DMV. Their individual roles in the alleged constitutional violations are not at issue on this interlocutory appeal.

While employed at the DMV, Supinger and Stultz repeatedly criticized DMV management decisions, both as to personnel issues related to an ongoing dispute that Supinger and Stultz had with a coworker, and as to the DMV's decision to reorganize its law enforcement divisions. After one employee at the Lynchburg office alleged that another had assaulted her, several employees at the office, including Supinger and Stultz, were investigated. Following the investigation, both Supinger and Stultz were suspended and then terminated in April 2013.

Under Virginia law, non-probationary law enforcement officers like Supinger and Stultz can choose to grieve suspension and termination decisions through either the Virginia State Grievance Procedure (VGP), Va. Code Ann. § 2.2-3001, *et. seq.*, or the Law-Enforcement Officers Procedural Guarantees Act (LEOPGA), Va. Code Ann. § 9.1-500, *et. seq.* These options are mutually exclusive; using one grievance procedure forecloses use of the other. *See* Va. Code Ann. § 2.2-3002 (noting that VGP provisions "shall not apply to" employees "whose grievances are subject to [LEOPGA] and who have elected to resolve such grievances under those provisions"); Va. Code Ann. § 9.1-502(B) (providing that a grievant "may proceed under either" VGP or LEOPGA, "but not both"). Supinger and Stultz elected to grieve their suspensions under the VGP, but did not immediately make an election for their termination grievances.

Shortly after their terminations, Supinger and Stultz filed a petition in Richmond City Circuit Court challenging the legality of the Virginia Attorney General's

5

appointment of a special counsel to represent the DMV in the administrative grievance proceedings. On June 27, 2013, the Richmond Circuit Court entered an order that the grievances be stayed pending resolution of the court case. In October 2013, the Richmond Circuit Court issued an order dismissing Supinger and Stultz's claims, dissolving the stay.

Meanwhile, in April 2013, the special counsel appointed to represent the DMV in the administrative proceedings contacted the director of the Office of Employment Dispute Resolution (EDR), the state agency responsible for VGP, to request a stay of grievance proceedings given the ongoing litigation. Supinger and Stultz requested that any stay be accompanied by tolling the deadline to file termination grievances. The EDR granted both requests, staying the proceedings and tolling the deadline. After the Richmond Circuit Court case was dismissed, Supinger's attorney requested that the stay remain in effect pending appeal.

On October 25, 2013, Supinger and Stultz wrote to the DMV to request a hearing under LEOPGA regarding their terminations. The DMV denied these requests, stating that Supinger and Stultz had previously elected to proceed under the VGP. These denials also stated that the request for a LEOPGA hearing was untimely, because such requests must be made "within a reasonable amount of time." Supinger J.A. 150 (quoting Va. Code Ann. § 9.1-504(A)); Stultz J.A. 130 (same). Supinger and Stultz repeated their requests for LEOPGA hearings on November 4 and November 1, respectively, and were again denied. The LEOPGA requests were renewed by Supinger on November 14 and by Stultz on November 18, and denied for a third time.

On November 19, 2013, EDR notified the parties that the stay of the VGP proceedings would remain in place pending the appeal of the Richmond Circuit Court order. EDR's letter also stated that Supinger and Stultz were welcome to file their termination grievances while the stay was in effect.[1]

On April 11, 2014, the Virginia Supreme Court refused Supinger's and Stultz's petitions for appeal of the Richmond Circuit Court's dismissal order. On May 2, 2014, the DMV wrote to EDR requesting that the stay on all of the grievances be lifted. Supinger and Stultz wrote to EDR on May 5, 2014, stating that VGP was unavailable because they had elected to use LEOPGA. EDR responded on May 6, 2014, noting that based on Supinger's and Stultz's letters, EDR's involvement was at an end.

Supinger and Stultz each filed suit alleging violations of various statutory and constitutional rights. Supinger initially filed suit in Lynchburg City Circuit Court, but the defendants removed the suit to the Western District of Virginia. Stultz filed his suit directly in the Western District of Virginia. The following description of the procedural history of each case is limited to those claims that are relevant to the current interlocutory appeal.

Supinger filed a motion for partial summary judgment on his due process claim against Holcomb, Hill, Thorpe, and Penny. The government officials opposed summary judgment in part by invoking qualified immunity. The district court granted summary

---

[1] On December 13, 2013, Supinger and Stultz filed a petition in the Roanoke Circuit Court seeking to compel the DMV to provide a LEOPGA hearing. That case was dismissed for lack of subject matter jurisdiction pursuant to state law in June 2014.

7

judgment to Supinger against Holcomb, Hill, and Thorpe, but denied summary judgment as to Penny, finding disputed issues of material fact regarding Penny's role. Holcomb, Hill, and Thorpe filed this interlocutory appeal challenging the district court's denial of qualified immunity on the due process claim.

Stultz filed a motion for partial summary judgment on his procedural due process claim against Holcomb, Hill, Thorpe, and Penny, as well as a motion for partial summary judgment on his First Amendment claim against Holcomb, Hill, Thorpe, Penny, Anderson, and Howard. The defendants invoked qualified immunity in their opposition to summary judgment on both claims, and filed a motion for summary judgment on all of Stultz's claims. The district court granted summary judgment to Penny on the due process claim, finding no evidence that Penny was involved in the alleged violations. However, the district court granted summary judgment to Stultz against Holcomb, Hill, and Thorpe on the due process claim, denying their assertion of qualified immunity. The district court rejected the government officials' assertions of qualified immunity on the First Amendment claim, ultimately denying summary judgment to all parties on this claim. Holcomb, Hill, and Thorpe filed this interlocutory appeal challenging the district court's denial of qualified immunity as to the due process claim. Holcomb, Hill, Thorpe, Penny, Anderson, and Howard appeal the district court's denial of qualified immunity as to the First Amendment claim.

## II.

Holcomb, Hill, and Thorpe contend that they are entitled to qualified immunity on Supinger's and Stultz's procedural due process claims. We disagree.

8

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotation marks omitted). To state a due process claim, "a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest," *Stone v. University of Md. Med. System Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)), and establish "that he has been 'deprived' of that protected interest by some form of 'state action.'" *Id.* (citing *Daniels v. Williams*, 474 U.S. 327 (1986)). The parties all agree that non-probationary state employees have a property interest in continued employment, and that the Due Process Clause of the Fourteenth Amendment is implicated when such employees are terminated. The parties also agree that due process in this context entails "a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the [state] statute." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547–48 (1985). It is undisputed that VGP and LEOPGA would each have satisfied due process.

Thus, the dispute turns solely on whether it was a violation of a clearly established right to refuse a LEOPGA hearing after the terminated employee requested that process, when state law provided that election of one statutory grievance process foreclosed use of the other.

Any reasonable state official would understand that refusing to provide a post-termination hearing would violate the Fourteenth Amendment's guarantee of due process.

9

And that is precisely what occurred in this case. Supinger and Stultz each sought to use a state grievance procedure that they were entitled under state law to elect. Their repeated requests to use that process were refused, and neither Supinger nor Stultz received any form of post-termination hearing.

The defendant officials attempt to create ambiguity by noting the paucity of case law interpreting the state statutes creating the VGP and LEOPGA provisions at issue. However, case law is not required where, as here, the relevant statutes are unambiguous. As this court has previously noted, "a right may be clearly established by any number of sources, including a criminal case, *a statute*, or the Constitution itself." *Owens v. Baltimore City State's Attys. Office*, 767 F.3d 379, 398–99 (4th Cir. 2014) (emphasis added).

It is beyond question, based on the plain text of each statute, that under state law an employee cannot use both VGP and LEOPGA procedures for the same grievance. The LEOPGA statute provides that "[a] law-enforcement officer may proceed under either the local governing body's grievance procedure [VGP, in this case] or the law-enforcement officer's procedural guarantees [LEOPGA], but not both." Va. Code Ann. § 9.1-502(B). Similarly, the VGP statute specifically directs that its "provisions . . . shall not apply to . . . [l]aw-enforcement officers as defined in [LEOPGA] whose grievances are subject to [LEOPGA] and who have elected to resolve such grievances under those provisions." Va. Code Ann. § 2.2-3002. It is difficult to imagine how a state statutory scheme could more clearly make two processes mutually exclusive.

10

Supinger and Stultz each chose to use LEOPGA to grieve their terminations, an option clearly provided to them by state law. Their repeated requests in October and November 2013 were unambiguous. *See* Supinger J.A. 143 ("Robert E. Lee Supinger, Jr. . . . files this grievance pursuant to . . . the Law Enforcement Officers Procedural Guarantee Act."); Stultz J.A. 141 ("Enclosed on behalf of . . . David Stultz is his grievance that is being filed pursuant to . . . Law-Enforcement Officers Procedural Guarantee Act.").

While the DMV argued that these requests were untimely, the DMV had promulgated no formal rules governing LEOPGA elections, and the LEOPGA statute requires only that grievances be filed "within a reasonable amount of time." Va. Code Ann. § 9.1-504(A). Here, LEOPGA grievances were filed approximately six months after the terminations at issue, and shortly after the conclusion of state litigation regarding representation in the grievance hearings. With no clearer guidance on the meaning of "a reasonable amount of time" and no promulgated procedures to request tolling of the deadline, a grievant could easily conclude that filing a LEOPGA grievance in this timeframe would be permissible. To allow the DMV to deny hearings on this basis would be to allow them to set a "trap for the unwary," Stultz Response Br. 34, rather than to require them to provide the process that is constitutionally due.

In denying the requested LEOPGA hearings, the DMV also alleged that Supinger and Stultz had already elected to grieve their terminations through VGP. In contrast to the clear LEOPGA elections made in October 2013, the various statements that the government officials point to as "elections" of VGP are at best non-binding suggestions

11

of how Supinger and Stultz intended to grieve their terminations. That Supinger and Stultz opted to grieve their suspensions under VGP is irrelevant to their termination grievances, because the suspension grievances and termination grievances are separate proceedings. Requests for stays and tolling to preserve the option to use VGP pending the state court litigation were also not themselves elections. Neither Supinger nor Stultz ever formally instituted VGP proceedings, and the government officials can point to no occasion in which Supinger or Stultz did more than discuss the future possibility of electing VGP.

As the district court noted, then, Supinger and Stultz elected LEOPGA in October 2013. Supinger J.A. 302; Stultz J.A. 2003. Under the unambiguous statutes governing VGP and LEOPGA, electing LEOPGA foreclosed the option to proceed under the VGP. By denying their requests for LEOPGA hearings, the government officials violated state law and deprived Supinger and Stultz of access to post-termination hearings.

A violation of a state statute does not, of course, necessarily equate to a violation of a federal right. Here, however, the state officials concede that Supinger and Stultz were entitled under the federal Constitution to a post-termination hearing. Yet the state officials' violations of state law prevented Supinger and Stultz from receiving any kind of hearing, under circumstances raising suspicions that their termination was rooted in their vocal disagreements with the policies of the officials who terminated them. In this case, violating clear state statutes resulted in a clear violation of federal law. Qualified immunity is not available to the government officials responsible.

12

The district court did not address the remedial phase of these cases, and we decline to do so as well. The district court can determine the appropriate remedies in the first instance on remand.

III.

Also before us in the Stultz case is an interlocutory appeal from the denial of qualified immunity on Stultz's First Amendment claims. Stultz alleges that he was terminated from the DMV in retaliation for exercising his First Amendment rights by informing a state senator and other state officials of his critical views of certain DMV policies. Specifically, Stultz alleges that his termination was due to (1) his criticism of the DMV's response to ongoing personnel issues in the Lynchburg office, including how the matter was investigated after he contacted the Virginia Fraud, Waste, and Abuse Hotline, and (2) his criticism of the proposed reorganization of the DMV's divisions to no longer align with the divisions of the Statewide Agencies Radio System.

Public employees cannot "be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Board of Ed. of Township High School Dist. 205, Will County*, 391 U.S. 563, 568 (1968). However, the Supreme Court has also long recognized that the government, as an employer, has an interest "in promoting the efficiency of the public service it performs through its employees." *Id.* Thus, "[t]he problem in any case is to arrive at a balance between [these] interests." *Id.*

Terminated government employees must therefore establish three elements to prove unlawful retaliation under the First Amendment. First, the plaintiff must

13

demonstrate that he was "speaking as a citizen upon a matter of public concern," rather than "as an employee about a matter of personal interest." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998). Second, the plaintiff must show that his "interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services." *Id.* Finally, the plaintiff must show that "the employee's speech was a substantial factor in the [ ] termination decision." *Id.* at 277–78.

The government officials contend that they are entitled to qualified immunity on different grounds as to each of Stultz's free speech claims. They assert that it was not clearly established under the first *Pickering* element that Stultz was speaking as a citizen upon a matter of public concern when he was addressing workplace personnel issues and related issues. They next contend that it was not clearly established under the second *Pickering* element that Stultz's interest in expressing his concerns regarding the DMV reorganization outweighed the government's interest in preserving the chain of command and maintaining an orderly workplace.

We recognize that qualified immunity is intended to spare government defendants the inconvenience and expense of trial, and should be resolved sooner rather than later. Here, however, we think it is important that the question of qualified immunity be resolved on a full record. Resolution of whatever further proceedings occur on the procedural due process claim cannot help but shed light on the *Pickering* factors, including both the degree to which Stultz's speech was on a matter of public concern and the strength of the government's countervailing interest, as well as the element of causation. We decline to reach a premature conclusion based on the limited information

currently available. Instead, we remand to the district court with instructions to hold the First Amendment questions in abeyance pending further proceedings on the procedural due process claims.

IV.

Based on the foregoing, the judgment of the district court in the Supinger case is *AFFIRMED*, and the judgment of the district court in the Stultz case is *AFFIRMED IN PART AND VACATED AND REMANDED IN PART*.